STATE OF CONNECTICUT *v.* RUDOLPH SNEAD
(13976)

Foti, Schaller and Cretella, Js.

Argued February 23—officially released June 4, 1996

*Glen W. Falk*, special public defender, with whom, on the brief, was *David B. Bachman*, special public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Nicholas J. Bove*, assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the third degree in violation of General Statutes §§ 53a-136 (a) and 53a-133, larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (3) and 53a-119, tampering with a witness in violation of General Statutes § 53a-151 (a), threatening in violation of General Statutes § 53a-62 (a) (1), and interfering with an officer in violation of General Statutes § 53a-167a (a). The defendant was acquitted of a charge of assault of a victim over sixty years old.

On appeal, the defendant claims that the trial court (1) improperly consolidated the interfering charge with the other offenses for trial, (2) abused its discretion in allowing the state to amend the information before jury selection, (3) improperly allowed the state to introduce evidence of and instructed the jury regarding consciousness of guilt, and (4) improperly denied the defendant's motion for acquittal on the charge of threatening. We affirm the judgment of the trial court.

The defendant was initially charged in two separate informations containing a total of four counts. In the

first information, the defendant was charged with robbery in the first degree, larceny in the second degree, and assault of a victim sixty years or older, based on an incident that occurred on November 1, 1992. The second information was based on an incident that occurred on October 8, 1993, when two Bridgeport police officers attempted to arrest the defendant. At that time, the defendant yelled, kicked and resisted the officers, giving rise to the additional charge of interfering with an officer.

Just prior to the start of jury selection, the trial court granted the state's motion to consolidate the two informations for trial. The trial court also allowed the state to file an amended long form information that reduced the original charge of robbery in the first degree to that of robbery in the third degree and, together with the charges of larceny in the second degree and assault of a victim over sixty, added the charges of tampering with a witness and threatening.

The jury reasonably could have found the following facts. On November 1, 1992, the victim went to Jackson Brothers' Lounge in Bridgeport to speak to a man named "Pumpkin" about having some wood delivered. On her way out, the victim was grabbed from behind by the defendant, who placed an object against her throat and demanded her money. The victim released her pocketbook to the defendant, and then the defendant shoved her, causing her to fall. The victim saw the defendant remove her wallet from her pocketbook and run away.

The victim called the police and the police drove her around the neighborhood in search of the defendant, but she did not see him. Later that day, the victim received a telephone call at home, threatening that if she went to the police, she would be "as good as dead."

## I

The defendant first argues that the trial court improperly consolidated the charges against him and failed to instruct the jury adequately regarding the necessity of considering the charges separately. Specifically, the defendant claims that the trial court improperly denied his motion for severance and granted the state's motion to consolidate the information relating to the November 1, 1992 robbery charge with the information relating to the October 8, 1993 interfering charge. We disagree.

Consolidation of charges in a joint trial is authorized both by statute and judicial rule. General Statutes § 54-57; Practice Book § 829. We further note that there is a clear presumption in favor of joinder and against severance. *State* v. *Chance*, 236 Conn. 31, 38, 671 A.2d 323 (1996). "[S]everance may be necessary to prevent undue prejudice resulting from the consolidation of two or more charges for trial when: (1) the cases do not involve discrete, easily distinguishable factual scenarios; (2) one or more of the counts alleges brutal or shocking conduct by the accused; or (3) the trial is one of long duration or very complex." Id., 42, citing *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987); *State* v. *Jennings*, 216 Conn. 647, 657–58, 583 A.2d 915 (1990). Whether to grant or deny a motion for severance rests in the discretion of the trial judge. *State* v. *Chance*, supra, 38. "Consistent with this discretion, which is broad, an accused bears a heavy burden to show that the denial of severance resulted in substantial injustice because of a manifest abuse of discretion in denying severance. . . . The burden includes a showing that any prejudice from joinder was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) Id.; see also *State* v. *Cassidy*, 236 Conn. 112, 132–33, 672 A.2d 899 (1996); *State* v. *Hermann*, 38 Conn. App. 56, 61–62, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995).

Applying these three factors, we conclude that the defendant was not prejudiced by the denial of his motion to sever and the granting of the state's motion to consolidate. First, the charges consolidated for trial involved discrete, easily distinguishable factual scenarios. The robbery, larceny and assault charges were based on the robbery of the victim at approximately 1 p.m. on November 1, 1992; the tampering and threatening charges arose from the defendant's telephone call to the victim later that day; and the interfering charge involved the defendant's conduct when the police attempted to arrest him on October 8, 1993. Second, although an element of violence was involved in this case, "the conduct was not so brutal or shocking as to create a substantial risk that the jury, with explicit instructions to treat each offense separately, would nevertheless treat the evidence cumulatively." *State* v. *Yopp*, 35 Conn. App. 740, 753, 646 A.2d 298 (1994). The facts in the present case compare favorably to more violent or disturbing crimes for which joinder has been approved. Third, the trial, which consisted of only two days of evidence, ten witnesses and six exhibits, was not so long or complex as to require severance.

"We also note that where evidence of one incident can be admitted at the trial of the other incidents, separate trials would provide the defendant no significant benefit, and under such circumstances he would ordinarily not be substantially prejudiced by joinder." (Internal quotation marks omitted.) *State* v. *Hermann*, supra, 38 Conn. App. 63. The trial court, in ruling on the motion to consolidate, correctly noted that evidence that the defendant resisted arrest, as well as the evidence regarding tampering with a witness and threatening, would probably be admissible in the robbery case as evidence of consciousness of guilt.

"Finally, although a curative instruction is not inevitably sufficient to overcome the prejudicial impact of [inadmissible other crimes] evidence . . . where the likelihood of prejudice is not overwhelming, such curative instructions may tip the balance in favor of a finding that the defendant's right to a fair trial has been preserved." (Citations omitted; internal quotation marks omitted.) *State* v. *Jennings*, supra, 216 Conn. 660. In this case, the trial court explicitly instructed the jury that it was required to consider each offense separately. We, therefore, conclude that the trial court did not abuse its discretion in consolidating the two informations for trial.

## II

The defendant next argues that the trial court abused its discretion by allowing the state to amend the information on the eve of trial to add tampering with a witness and threatening charges relating to an event that occurred at a different place and time than the robbery with which the defendant was charged.[1] We disagree.

As we have noted, the original long form information charged the defendant with robbery, larceny and assault. On the morning that jury selection was sched-

---

[1] As part of this argument, the defendant claims that at trial, defense counsel requested a continuance should the trial court overrule his objection to the filing of the amended information. According to the defendant, the trial court abused its discretion in denying this request. A review of the transcript reveals, however, that no such request was made.

The defendant additionally argues that his convictions on the tampering and threatening charges are illegal because he was never arraigned on those charges. We note, however, that this objection was not made in a timely fashion. We further note that the defendant does not claim that this concerns a constitutional issue, nor does the defendant seek review either as plain error under Practice Book § 4185 or pursuant to *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We, therefore, agree with the state that this claim is not entitled to review.

uled to begin, the state filed an amended information adding the charges of tampering with a witness and threatening. These charges related to the alleged telephone call made by the defendant to the victim subsequent to the alleged robbery. Following oral argument, the trial court overruled the defendant's objection to the filing of the amended information.

"Before the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § 623. Once the trial has started, however, the prosecutor is constrained by the provisions of Practice Book § 624." *State* v. *Tanzella*, 226 Conn. 601, 607, 628 A.2d 973 (1993). It is clear that for purposes of Practice Book §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors. Id., 607–608; *State* v. *Nixon*, 32 Conn. App. 224, 229, 630 A.2d 74 (1993), aff'd on other grounds, 231 Conn. 545, 651 A.2d 1264 (1995). In the present case, the state filed an amended long form information before jury selection commenced and thus § 623 governed the trial court's analysis.[2] That section provides that "[i]f the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced."

We conclude that the defendant has not shown that the amended information prejudiced him or that the trial court's ruling was an abuse of discretion.

### III

The defendant next argues that the court should not have allowed testimony of his actions at the time of his

---

[2] We reach this conclusion despite the defendant's assertion that the court should have looked to Practice Book § 624 for guidance.

arrest as evidence of consciousness of guilt or instructed the jury on that subject. The defendant claims that although he did not object to the admission of the evidence of flight for this purpose, and although this issue is evidentiary rather than constitutional, we may nonetheless review the trial court's failure to require a proper foundation for the evidence under the plain error provisions of Practice Book § 4185.[3] We disagree.

Plain error review is reserved for extraordinary circumstances and situations in which "the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). That is not the case here. It has further been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the *Evans-Golding* standard. See *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Merritt*, 36 Conn. App. 76, 96, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995). We, therefore, decline to review this claim.

## IV

The defendant's final claim is that the trial court improperly denied his motion for judgment of acquittal on the charge of threatening. Specifically, the defendant argues that because the state failed to show that he placed or attempted to place the victim in fear of imminent physical injury, there was insufficient evidence to convict him on the charge of threatening. We disagree.

---

[3] Practice Book § 4185 provides in relevant part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

"In reviewing [a] sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Mejia*, 233 Conn. 215, 223, 658 A.2d 571 (1995); see also *State* v. *Haggood*, 36 Conn. App. 753, 760, 653 A.2d 216, cert. denied, 233 Conn. 904, 657 A.2d 644 (1995).

General Statutes § 53a-62 (a) provides that "[a] person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ." According to the defendant, his conviction under this statute cannot stand because the threatened harm was contingent on a future event, namely, the defendant's learning that the victim had gone to the police. In support of this argument, the defendant cites *State* v. *Bellino*, 31 Conn. App. 385, 395, 625 A.2d 1381 (1993), appeal dismissed, 228 Conn. 851, 635 A.2d 812 (1994), for the proposition that the court should apply the definition of "imminent" contained in the self-defense statute, General Statutes § 53a-19, which requires the "imminent use of physical force." We will not import the definitions associated with self-defense into a separate statute designed for an entirely distinct purpose.

The defendant also cites *Hill* v. *State*, 844 S.W.2d 937 (Tex. App. 1992), in support of his claim that imminence requires proof more pressing than that harm or physical force may occur sometime in the future. In *Hill*, the issue was whether the appellant had threatened a police officer with imminent bodily injury for purposes of the Texas assault statute, Tex. Penal Code Ann. § 22.01 (a) (2) (Vernon 1989). That statute provides that a person

is guilty of assault if the person "intentionally or knowingly threatens another with imminent bodily injury." The appellant in *Hill* made threats to a police officer while the appellant's hands were handcuffed behind his back. The police officer testified that he was afraid the appellant would make good on his threats when he got out of jail, but he acknowledged that the appellant could not carry out his threats when they were made because he was handcuffed.

The court in *Hill* held that because the appellant's threats "were in no way on the verge of happening," they did not threaten "imminent" bodily injury. Id., 938. The court further noted that "[t]he threats were conditioned on a remote and future event: appellant's release from jail" and that the "appellant had no present ability to carry out the action promised by his threats." Id., 939. The present case is distinguishable from *Hill* in that the defendant here had the present ability to harm the victim. The defendant, who was aware of the victim's recent return to her home, not only had the present ability but also the opportunity to carry out his threat.

In *State* v. *Boyer*, 2 Conn. Cir. Ct. 288, 198 A.2d 222 (App. Div. 1963), the court considered whether a threat made over the telephone constituted a violation of General Statutes (Rev. to 1958) § 53-174, the former breach of the peace statute. We agree with the court in *Boyer*, which noted that the statute did not require a showing of true immediacy. As the court stated: "We find no authority for the claim that to constitute a threat under our statute there must be immediate menace of violence or acts showing a present ability and will to execute the threat. That would liken the threat to an assault, which is and always has been a separate offense under our statute and distinct from a threat. A threat imports the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. A threat, unlike an assault, is not limited by time or distance. It

594

is equally vicious whether made vis-a-vis or over a wall or across a stream, or whether it is uttered by the unaided voice or over a megaphone or is amplified through a loudspeaker. A threat is always an indication of probable evil to come, whether at once or at some certain or uncertain time in the future; and the lingering or uncertainty of the menace, particularly when voiced through a faceless telephone, is apt to cause greater fear and dread than if the threat was made face to face by an adversary who could be held to immediate accountability." Id., 291–92.

We conclude that there was sufficient evidence to prove that the defendant, by his threat, placed the victim in fear of imminent physical injury.

The judgment is affirmed.

In this opinion the other judges concurred.