STATE OF CONNECTICUT *v.* MIGUEL A. COLON
(AC 29684)

DiPentima, Alvord and Dupont, Js.

Argued June 1—officially released September 15, 2009

*John R. Williams*, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Carl R. Ajello III*, assistant state's attorney, and *Robert F. Mullins*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. In this appeal, the defendant, Miguel A. Colon, claims that the evidence was insufficient to support his conviction of interfering with an officer in violation of General Statutes § 53a-167a (a), threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). We disagree and, accordingly, affirm the judgment of the trial court.

On January 29, 2008, the state, by way of a three count, long form information, charged the defendant with the aforementioned counts. The defendant entered a plea of not guilty on all three counts. Following a trial to the court on January 30, 2008, the court rendered judgment of guilty on each count on February 8, 2008. On February 28, 2008, the court sentenced the defendant to a total effective term of one year incarceration, execution suspended, and two years of probation. This appeal followed.

The court found the following facts. On September 24, 2006, Maria Colon, the defendant's former wife, drove to the defendant's home to drop off his current wife, Julia Colon. Maria Colon exited her vehicle and walked across the street to the defendant's home. The defendant, who was standing outside with members of his family, shouted at her to get off of his property. She immediately retreated to the other side of the street. A disturbance ensued. Maria Colon called her husband, Robert Swartout, who arrived at the scene shortly thereafter. Maria Colon and Swartout remained on the side of the street opposite the defendant's home, occasionally yelling at the defendant.

The police were called. Officers John Zweibelson and Gina Liappes, both of whom were acting in their capacities as Hartford police officers, arrived in response to the call. The officers attempted to control the situation. The defendant refused to comply with their instructions to "calm down." Instead, the defendant moved approximately halfway across the street toward Maria Colon and Swartout before Zweibelson was able to get the defendant back on the other side of the street. During this time, the defendant was yelling: "I'm going to kill you. I'm going to kill you and you." The defendant continued to ignore police instructions and ran into the house, thereby escalating the situation. Maria Colon yelled that there was a gun in the house. Zweibelson

and Liappes ran after the defendant into the house. They found the defendant reaching into a closet in which a gun was later discovered. The officers eventually were able to calm the defendant and regain control over the situation.

Our standard of review for a claim of insufficiency of the evidence introduced to prove a violation of a criminal statute is well settled. We first construe the evidence in the light most favorable to sustaining the verdict. We then determine whether based on the facts so construed and the inferences reasonably drawn therefrom the finder of fact reasonably could have concluded that the cumulative impact of the evidence established the defendant's guilt beyond a reasonable doubt. See *State* v. *Williams*, 110 Conn. App. 778, 783, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008).

"[Although] the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Michael H.*, 291 Conn. 754, 759, 970 A.2d 113 (2009). Thus, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's judgment] of guilty." (Internal quotation marks omitted.) Id.

Moreover, as an appellate court, we do not act as a finder of fact capable of rendering judgment on the basis of some feeling of doubt of guilt perceived from the printed record. Instead, we must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009). "[The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Santos*, 108 Conn. App. 250, 253, 947 A.2d 414 (2008).

I

The defendant first claims that the evidence was insufficient to support his conviction of interfering with an officer.[1] Specifically, the defendant argues that because Zweibelson testified that he was speaking with the defendant "as a friend" rather than as a law enforcement officer, the state failed to prove that the defendant hindered an officer in the performance of the officer's official duties.[2]

Citing *State* v. *Aloi*, 280 Conn. 824, 911 A.2d 1086 (2007), the court found the defendant guilty of the crime of interfering with a police officer. Specifically, the

---

[1] We note that the defendant has not submitted a signed transcript by the trial court. See Practice Book § 64-1. He did, however, submit an unsigned transcript. "On occasion, we will entertain appellate review of an unsigned transcript when it sufficiently states the court's findings and conclusions." (Internal quotation marks omitted.) *State* v. *Oliphant*, 115 Conn. App. 542, 544, 973 A.2d 147, cert. denied, 293 Conn. 912, 978 A.2d 1113 (2009). We have reviewed the unsigned transcript and conclude that it provides an adequate record for review.

[2] The defendant is also a Hartford police officer.

court made the following findings: "I do find that the defendant did obstruct and hinder a peace officer. I find that he did it while they were in the performance of their duties. And I find that he intended to obstruct and hinder the officers, particularly . . . Zweibelson, in the performance of their duties. [The officers] were there to restore the peace. The defendant clearly intended to continue on his own course, clearly intended to frustrate their efforts to restore the peace."

Section 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." The statute also requires that the state prove that the defendant had the specific intent to interfere with an officer. *State* v. *Williams*, supra, 110 Conn. App. 793. On appeal, the defendant challenges only the element that he hindered an officer who was acting in the performance of the officer's official duties.

"The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own. . . . These are factual questions for the [trier of fact] to determine on the basis of all the circumstances of the case . . . ." (Internal quotation marks omitted.) *State* v. *Casanova*, 255 Conn. 581, 593, 767 A.2d 1189 (2001).

The court's finding that Zweibelson was acting within the scope of what he is employed to do and was at the defendant's house "for the purpose of restoring the peace" is supported amply by the evidence. Zweibelson testified that he arrived at the defendant's house in response to a call received in his capacity as a police officer. He also testified that he was there to control the situation and to prevent it from escalating. The court

also heard evidence that Zweibelson arrived in uniform. Moreover, the fact that Zweibelson knew the defendant personally and adjusted his response to the defendant accordingly does not preclude the officer from acting within the scope of his duties as a police officer.

Accordingly, we conclude that the evidence was sufficient to support the court's finding that the defendant interfered with a police officer in the performance of his official duties.

## II

The defendant next claims that because his actions constituted merely a "verbal threat," rather than a "physical threat," the evidence at trial was insufficient to support his conviction of threatening in the second degree. We disagree.

As to the charge of threatening in the second degree, the court made the following findings: "I find . . . that [the defendant] did state to [Maria Colon] that he intended to kill her. . . . And I find that under the circumstances that existed at the time, that he did intend to put Maria [Colon] in fear of imminent serious physical injury." The court also found that the defendant was "approaching [Maria Colon and Swartout] in a menacing and threatening way" while he was making these threats.

Section 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ." Under this statute, "threatening . . . requires the state to show that the defendant, by physical threat, intentionally placed or attempted to place another person in fear of imminent serious physical injury. It is not the danger or risk of injury, but the victim's perception, which is essential

to the . . . crime." (Internal quotation marks omitted.) *State* v. *Gibson*, 75 Conn. App. 103, 122–23, 815 A.2d 172 (2003), rev'd in part on other grounds, 270 Conn. 55, 850 A.2d 1040 (2004).

The court heard evidence that the defendant threatened to kill Maria Colon as he was moving across the street toward her. Maria Colon testified that the defendant's threats that he was going to kill her placed her in fear of physical harm, and the court credited her testimony. See *State* v. *Blango*, 102 Conn. App. 532, 542, 925 A.2d 1186 (evidence sufficient to establish guilt of threatening in second degree when defendant, while holding gun, asked victims if they had " 'ever been shot before' "), cert. denied, 284 Conn. 913, 931 A.2d 932 (2007); *State* v. *Gibson*, supra, 75 Conn. App. 123–24 (sufficient evidence to support defendant's conviction under § 53a-62 [a] [1] when defendant, while grabbing victim's arm, stated to victim, " 'when [I get] out of jail, it's going to be just [you and me]' "); *State* v. *Snead*, 41 Conn. App. 584, 586, 592–94, 677 A.2d 446 (1996) (evidence sufficient to prove defendant placed victim in fear of imminent physical injury under § 53a-62 [a] [1] when defendant told victim she would be " 'as good as dead' " if she called police).

As this court frequently has observed, "[i]ntent is a mental process, and absent an outright declaration of intent, must be proved through inferences drawn from the actions of an individual, i.e., by circumstantial evidence. . . . Furthermore, any inference drawn must be [rational] and founded upon the evidence." (Internal quotation marks omitted.) *State* v. *Ward*, 76 Conn. App. 779, 798, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003). We conclude that there was sufficient evidence from which the court reasonably could have inferred that the defendant had intended to place or attempt to place Maria Colon in fear of imminent serious physical injury.

Viewing the evidence in a light toward sustaining the verdict, we conclude that the cumulative impact of the evidence was sufficient for the court to find beyond a reasonable doubt that the defendant's actions constituted a physical threat and, therefore, that the defendant was guilty of threatening in the second degree.

### III

The defendant's final claim challenges the sufficiency of the evidence in support of his conviction of breach of the peace in the second degree. We are not persuaded.

In support of its judgment of guilty as to breach of the peace in the second degree, the court found that "the defendant's actions and conduct . . . and words, amount to violent, tumultuous and threatening behavior that did portend physical violence." On appeal, the defendant argues that the court's finding "is inconsistent with the undisputed evidence that the defendant was but one of many people involved in the identical conduct at the same time."

To prove the defendant guilty of breach of the peace in the second degree in violation of § 53a-181 (a) (1), the state was required to prove beyond a reasonable doubt that "(1) the defendant engaged in fighting or in violent, tumultuous or threatening behavior, (2) that this conduct occurred in a public place and (3) that the defendant acted with the intent to cause inconvenience, annoyance or alarm, or that he recklessly created a risk thereof." *State* v. *Simmons*, 86 Conn. App. 381, 386–87, 861 A.2d 537 (2004), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005); see General Statutes § 53a-181 (a) (1).

Drawing our attention to testimony that he was one of many individuals involved in the chaotic scene at his home, the defendant argues that his "conduct could not

have created a risk of causing inconvenience, annoyance or alarm because all of those things were already taking place . . . ." The defendant cites no authority and has provided no legal analysis to support his contention that because his conduct occurred in the midst of the conduct of others at the scene, he cannot be liable criminally for his actions.

In reviewing the court's factual findings, we are mindful that "the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the [finder of fact], and, therefore, we must afford those determinations great deference." (Internal quotation marks omitted.) *State* v. *Ragin*, 106 Conn. App. 445, 451, 942 A.2d 489, cert. denied, 287 Conn. 905, 950 A.2d 1282 (2008).

Our review of the record reveals that the evidence was sufficient to support the court's finding. The court heard testimony that the defendant was yelling and making threats and that he appeared extremely agitated. The court also heard evidence that the defendant, while on the street, had to be restrained by police to stop him from attacking Maria Colon and Swartout. Further, the court heard testimony that the defendant ignored police commands, fled into his house and was found reaching into a closet that contained a firearm. In addition, Zweibelson testified that the defendant's action caused him to be concerned for the defendant's safety as well as the safety of others.

Therefore, we conclude that the evidence was sufficient to support the defendant's conviction of breach of the peace in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.